# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF INDIANA
# INDIANAPOLIS DIVISION

EARL KEY, )
)
        Plaintiff, )
)
v. ) No. 1:14-cv-1007-JMS-TAB
)
INDIANA UNIVERSITY HEALTH )
 BLOOMINGTON HOSPITAL, et al., )
)
        Defendants. )

## Entry Discussing Pending Motions and
## Directing Entry of Final Judgment

Earl Key, a resident of Illinois, brings a medley of federal and state claims in this actions. The defendants have appeared, in one instance filing an answer and in all cases filing a motion to dismiss. Those motions are fully briefed and are resolved through this Entry. This Entry is structured to (1) identify the parties and the claims, (2) identify the legal standards applicable to the defendants' motions, (3) analyze the plaintiff's federal claims in light of the defendants' challenges to them, and (4) analyze the plaintiff's pendent state claims, if warranted, and deal with any remaining matters.

## I. The Parties and the Claims

Earl Key is a resident of Illinois and filed this action on June 18, 2014. The operative complaint is the amended complaint filed on September 11, 2014. The defendants are the following:

    Indiana University Health Bloomington Hospital
    Monroe County, Indiana
    Lumar Griggs
    Stephen A. Oliver
    Penny Shenefield

    Laura Johnson
    Ian Bissonette
    Melissa Ward
    G. Thomas Gray
    Morgan County, Indiana
    Sophia Stewart
    Extendicare Health Services, Inc.
    Timothy L. Lukenda,

As referred to in this Entry, "Key" refers to the plaintiff, Earl Key, "I.U. Hospital" refers to Indiana University Health Bloomington Hospital, "APS" refers to Adult Protective Services, "Jones" refers to April Jones, "Parkview" refers to Parkview Nursing Center in Muncie, Indiana, "Parkview defendants" refers to Penny Shenefield, Laura Johnson, Ian Bissonnette, Melissa Ward, Extendicare Health Services, Inc., and Timothy L. Lukenda, "Extendicare" refers to Extendicare Health Services, Inc., "ADA" refers to the Americans with Disabilities Act, 42 U.S.C. § 12132 *et seq.*, "State defendants" referes to Judge G. Thomas Gray and court-appointed guardian Lumar Griggs, and "RICO" refers to the Racketeer Influenced and Corrupt Organization Act.

  An overview of allegations from the amended complaint is this: Key claims that he is the target and victim of misconduct by the defendants. Key has a longstanding relationship with April Jones, who suffers from Huntington's disease. Huntington's Disease is an inherited brain disorder and is considered a major neurocognitive disorder. It is a progressive neurodegenerative disorder, meaning that it causes the breakdown of nerve cells in the brain.

  Cindy Jones and Wendy Scott gained access to Jones' apartment on January 4, 2011 and January 10, 2011. They visited until told to leave, which they did. On January 18, 2011, APS presented a petition to Morgan County Judge Gray alleging that Jones was an endangered adult. Judge Gray granted the petition on the same day. On January 19, 2011, Jones was seized from her apartment by APS employees and two officers of the Martinsville, Indiana Police Department. Jones was forced to leave her apartment, and on that same day an emergency hearing was held.

Jones was present, although she was not represented by counsel and there were other irregularities in the proceeding. Pursuant to a court order, Jones was transported to a psychiatric facility at I.U. Hospital. She was medicated and she remained at I.U. Hospital until January 26, 2011, at which time she was transported to Parkview. On March 15, 2011, Lumar Griggs was made permanent legal guardian of Jones by the Morgan Superior Court in No 55D01-0804-GU-029. This occurred at a hearing before Judge Gray. Key was present. Jones was present both in person and with her attorney. The temporary guardianship, which had been issued on February 15, 2011, continued.

Jones remains at Parkview. She remains medicated in various respects, most of which Key believes to be improper and unwarranted. Key has protested the medication matter to Griggs, but without success. Key visits with Jones frequently, continuing what he describes as "long-term involvement in Ms. Jones' life." Key has apparently even more frequently clashed with staff at Parkview concerning the manner in which they carry out their responsibilities to care for Jones and on other matters.

On August 1, 2011, Key brought an action in this Court for habeas corpus relief on behalf of Jones. This action was docketed as No. 1:11-cv-1034-TWP-DML and was dismissed on April 5, 2012 for lack of jurisdiction. That disposition is being challenged and proceedings in the appeal, docketed as No.12-02094, are ongoing. It was found in Judge Pratt's *Order Following Limited Remand* that Jones exhibits typical manifestations of Huntington's disease, including repetitive involuntary movements of her head, back, and limbs, a significant speech impediment, progressive cognitive decline, complete incontinence, dementia, the inability to make and carry out daily plans without assistance from staff, difficulties with learning and memory, and difficulties with similar functions such as organizational abilities. The most recent order in the pending appeal, according to PACER records, was issued on March 10, 2015 and directs Key to show cause by May 11, 2015,

why the appeal should not be dismissed or the district court summarily affirmed. Steven Oliver is an attorney who represented Jones' state court-appointed guardian, Lumar Griggs, in the habeas proceeding following a limited remand from the Court of Appeals and in the Court of Appeals.

## II. Legal Standards
### A. General Observations

"Congress has conferred subject matter jurisdiction on the district courts only in cases that raise a federal question and cases in which there is diversity of citizenship among the parties." *Smart v. Local 702 Intern. Broth. of Elec. Workers,* 562 F.3d 798, 802 (7th Cir. 2009).

Pursuant to 28 U.S.C. § 1331, federal district courts have original jurisdiction over "all civil actions arising under the Constitution, laws, or treaties of the United States." "A case 'arises under' federal law either where federal law creates the cause of action or 'where the vindication of a right under state law necessarily turn[s] on some construction of federal law.'"

District courts also possess diversity jurisdiction. Diversity jurisdiction exists where the amount in controversy exceeds $75,000 and the cause of action is between citizens of different states. 28 U.S.C. § 1332(a)(1). In federal law citizenship means domicile, not residence." *America's Best,* 980 F.2d at 1074 (citing *Gilbert v. David,* 235 U.S. 561 (1915)). As the party seeking to invoke federal diversity jurisdiction, Key bears the burden of demonstrating that the requirement of complete diversity has been met. *Chase v. Shop 'N Save Warehouse Foods, Inc.,* 110 F.3d 424, 427 (7th Cir. 1997). Key has invoked the court's diversity jurisdiction as to claims not proceeding under § 1331.

Many claims in this action are based on what the defendants' allegedly did to Jones. Largely because of the doctrine of standing, Key is quite limited in his ability to assert claims based on what the defendants (or others) allegedly did to Jones.

> The jurisdiction of federal courts is limited by Article III of the Constitution to "Cases" and "Controversies." U.S. Const. art. III, § 2. No "Case" or "Controversy" exists if the plaintiff lacks standing to challenge the defendant's alleged misconduct. The plaintiff bears the burden of establishing the required elements of standing.

*Freedom from Religion Found., Inc. v. Lew*, 773 F.3d 815, 819 (7th Cir. 2014)(internal citations omitted). The burden to establish standing is on the party invoking federal jurisdiction and the elements he must show are: (i) an injury in fact, which is an invasion of a legally protected interest that is concrete and particularized and, thus, actual or imminent, not conjectural or hypothetical; (ii) a causal relationship between the injury and the challenged conduct, such that the injury can be fairly traced to the challenged action of the defendant; and (iii) a likelihood that the injury will be redressed by a favorable decision. *Lee v. City of Chicago*, 330 F.3d 456, 468 (7th Cir. 2003) (citing *Lujan v. Defenders of Wildlife,* 504 U.S. 555, 560–61 (1992)). A "plaintiff generally must assert his own legal rights and interests, and cannot rest his claim to relief on the legal rights or interests of third parties." *Valley Forge Christian College v. Americans United for Separation of Church and State, Inc.,* 454 U.S. 464, 474 (1982) (internal quotation marks and citations omitted).

There is mention in the briefs of the *Rooker-Feldman* doctrine, pursuant to which "lower federal courts do not have jurisdiction to conduct direct review of state court decisions." *Lewis v. Anderson*, 308 F.3d 768, 771–72 (7th Cir. 2002). In the setting present here, moreover, there is also occasion to recognize that claims associated with the state guardianship proceeding fall outside the scope of this Court's jurisdiction because of the probate exception to federal jurisdiction. *Marshall v. Marshall,* 547 U.S. 293, 310–12 (2006) (quoting *Markham v. Allen,* 326 U.S. 490, 494 (1946)).

### B. Motions to Dismiss

Under Fed.R.Civ.P. 8(a)(2), a complaint must contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Rule 12, which provides for dismissal of a

plaintiff's cause of action for "failure to state a claim on which relief can be granted," see Fed.R.Civ.P. 12(b)(6), must be read in conjunction with Federal Rule of Civil Procedure 8(a). *See Ileto v. Glock Inc.*, 349 F.3d 1191, 1199–1200 (9th Cir. 2003). "A motion under Rule 12(b)(6) challenges the sufficiency of the complaint to state a claim upon which relief may be granted." *Hallinan v. Fraternal Order of Police Chicago Lodge No. 7,* 570 F.3d 811, 820 (7th Cir. 2009).

> To satisfy the notice-pleading standard of Rule 8 of the Federal Rules of Civil Procedure, a complaint must provide a "short and plain statement of the claim showing that the pleader is entitled to relief," which is sufficient to provide the defendant with "fair notice" of the claim and its basis. *Erickson v. Pardus,* 551 U.S. 89, 93, 127 S. Ct. 2197, 167 L.Ed.2d 1081 (2007) (per curiam) (citing *Bell Atl. Corp. v. Twombly,* 550 U.S. 544, 555, 127 S. Ct. 1955, 167 L.Ed.2d 929 (2007) and quoting Fed.R.Civ.P. 8(a)(2)). To survive a motion to dismiss, the complaint "must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face. . . . A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal,* 556 U.S. 662, 129 S. Ct. 1937, 1949, 173 L.Ed.2d 868 (2009) (quotations omitted).

*Appert v. Morgan Stanley Dean Witter, Inc.,* 673 F.3d 609, 622 (7th Cir. 2012). Principles pertinent to the evaluation and resolution of such motions include the following:

> In reviewing a plaintiff's claim, the court must construe all of the plaintiff's factual allegations as true, and must draw all reasonable inferences in the plaintiff's favor. In applying the foregoing standard, however, legal conclusions and conclusory allegations merely reciting the elements of the claim are not entitled to this presumption. *Virnich v. Vorwald,* 664 F.3d 206, 212 (7th Cir. 2011)(citing *Iqbal,* 129 S. Ct. at 1951).

> "A complaint must always . . . allege 'enough facts to state a claim to relief that is plausible on its face.'" *Limestone Development Corp. v. Village of Lemont, Ill.,* 520 F.3d 797, 803 (7th Cir. 2008) (quoting *Bell Atlantic Corp. v. Twombly,* 127 S. Ct. 1955, 1974 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal,* 556 at 667. The court undertakes this context-specific inquiry, drawing on its experience and common sense for guidance. *Cooney v. Rossiter,* 583 F.3d 967, 971 (7th Cir. 2009).

> Although legal conclusions "can provide the framework of a complaint, they must be supported by factual allegations." *Ashcroft v. Iqbal,* 556 U.S. 662, 664 (2009). Accordingly, the Supreme Court has prescribed a "two-pronged approach" for evaluating Rule 12(b)(6) challenges. *Id.* First, a court should divide the allegations between factual

and legal allegations; factual allegations should be accepted as true, but legal allegations should be disregarded. *Id.* Second, the factual allegations must be examined for facial plausibility. *Id.*

"[D]ismissal may be based on either a lack of a cognizable legal theory or the absence of sufficient facts alleged under a cognizable legal theory." *Johnson v. Riverside Healthcare Sys.,* 534 F.3d 1116, 1121 (9th Cir. 2008) (internal quotations and citations omitted); *see also Neitzke v. Williams,* 490 U.S. 319, 326 (1989) ("Rule 12(b)(6) authorizes a court to dismiss a claim on the basis of a dispositive issue of law").

Plausibility is defeated, however, if a plaintiff "pleads himself out of court when it would be necessary to contradict the complaint in order to prevail on the merits." *Tamayo v. Blagojevich,* 526 F.3d 1074, 1086 (7th Cir. 2008). This occurs when "a party . . . plead[s] itself out of court by pleading facts that establish an impenetrable defense to its claims." *Massey v. Merrill Lynch & Co.*, 464 F.3d 642, 650 (7th Cir. 2006). "A complaint is subject to dismissal for failure to state a claim if the allegations, taken as true, show that plaintiff is not entitled to relief." *Jones v. Bock,* 127 S. Ct. 910, 921 (2007).

Pro se complaints such as that filed by Key are construed liberally and held to a less stringent standard than formal pleadings drafted by lawyers. *Obriecht v. Raemisch*, 517 F.3d 489, 491 n.2 (7th Cir. 2008). Liberal construction means that if the court can reasonably read the pleadings to state a valid claim on which the party could prevail, it should do so. Despite this liberal construction, the court Αwill not invent legal arguments for litigants, and is not obliged to accept as true legal conclusions or unsupported conclusions of fact.@ *County of McHenry v. Insurance Company of the West,* 438 F.3d 813, 818 (7th Cir. 2006) (internal quotations and citations omitted).

### III. Discussion

*Claim 9*

Key asserts in claim 9 that the defendants have violated his First Amendment right of association. It is settled that the First Amendment protects the rights to speak, publish, and assemble against abridgement only by the government. U.S. Const. amend. I. *See also Hudgens v. N.L.R.B.,* 424 U.S. 507, 513 (1976). In this case, that precludes a First Amendment claim against the Parkview defendants and against I.U. Hospital. *See Riser v. WSYX-TV ABC-6,* 2002 U.S. Dist.

LEXIS 23654 at *30 (S.D.Ohio July 17, 2002)(stating "the First Amendment . . . does not protect individuals from infringement by private actors.").

However, "[p]rivate persons jointly engaged with state officials in a deprivation of civil rights are acting under color of law for purposes of § 1983." *Hooks v. Hooks,* 771 F.2d 935, 943 (6th Cir. 1985). It is doubtful whether a First Amendment "conspiracy" can be used to supply the element of state action, *Egan v. City of Aurora,* 291 F.2d 706, 708 (7th Cir. 1961), but in any event a conspiracy is not plausibly alleged here and any action by the private actors for a First Amendment violation would be barred by the 2-year statute of limitations. *Logan v. Wilkins*, 644 F.3d 577, 581 (7th Cir. 2011); *Behavioral Inst. of Ind., LLC v. Hobart City of Common Council*, 406 F.3d 926, 929 (7th Cir. 2005); *see* IND. CODE ' 34-11-2-4.

As to the defendants who are state actors, the allegations in claim 9 are insufficient because (a) the violation of Key's First Amendment right of association with Jones is not plausibly alleged, and (b) any such claim would be time-barred. *See Leavell v. Kieffer,* 189 F.3d 492, 495 (7th Cir. 1999) ("Under federal law, the time [for bringing a claim] begins to run when the plaintiff knows that he has been injured."); *Hondo, Inc. v. Sterling,* 21 F.3d 775, 778 (7th Cir.1994) (stating that a Section 1983 claim "accrues when the plaintiff knows or has reason to know of the injury which is the basis of his action").

### *Claim 10*

Claim 10 is asserted pursuant to the ADA and is asserted against each of the defendants. This claim is dismissed as legally insufficient because (a) Key lacks standing to assert it, (b) the claim itself offers "labels and conclusions," (c) the claim is barred by Indiana's statute of limitations for personal injury actions, *Soignier v. American Bd. Of Plastic Surgery*, 92 F.3d 547, 551 (7th Cir. 1996) (citing cases); *Cordova v. University of Notre Dame Du Lac*, 936 F.Supp.2d 1003, 1007 (N.D.Ind. 2013); *Strominger v. Indiana Dept. of Corrections*, 2014 WL 2452967, *2

(S.D.Ind. 2014). and (d) a claim under the ADA cannot be brought against defendants in their individual capacities. *Walker v. Snyder,* 213 F.3d 344, 346 (7th Cir. 2000)("In suits under Title II of the ADA . . . the proper defendant usually is an organization rather than a natural person . . . . Thus, as a rule, there is no personal liability under Title II.").

### *Claims 1, 2, 4, 5, 6, 7, 11, 13 and 14*

Key spins a convoluted tale of misconduct by the APS and its personnel, supposedly acting pursuant to authority held by or procedures followed by Morgan County and/or Monroe County and the State defendants. This agency however, and the "teams" developed to implement its responsibilities, are "classified as part of the state for purposes of the eleventh amendment." *Holmes v. Marion Cnty. Office of Family & Children*, 349 F.3d 914, 919 (7th Cir. 2003). Official capacity claims against these defendants are therefore barred by Indiana's eleventh amendment immunity, *see Tucker v. Williams,* 682 F.3d 654, 658 (7th Cir. 2012) ("The Eleventh Amendment provides states with immunity from suits in federal courts unless the State consents to the suit or Congress has abrogated their immunity."), and individual capacity claims are barred by Indiana's 2-year statute of limitations. Indiana counties are not liable for the misconduct of county prosecutors when act pursuant to state statute because county prosecutors are considered state officers. *Mendenhall v. City of Indianapolis*, 717 N.E.2d 1218, 1225 (Ind. Ct. App. 1999); *Delk v. Board of Commissioners of Delaware County*, 503 N.E.2d 436, 440 (1987). Prosecutors are truly *state* actors. *Bibbs v. Newman,* 997 F.Supp. 1174, 1178 (S.D.Ind.1998); *Study v. U.S.,* 782 F.Supp. 1293, 1297 (S.D.Ind. 1991). The office of prosecutor is a creation of the Indiana Constitution, *see* Ind. Const. art. 7, § 16, and state statutes govern the prosecutor's duties and powers. Furthermore, the structure and processes so viciously maligned by Key are precisely what seem to be prescribed by Indiana statute. *See Family and Social Services Admin. v. Calvert*, 672 N.E.2d 488, 491 (Ind.

Ct.App. 1996)("FSSA is an umbrella agency with three divisions, one of which is the Division of Disability, Aging and Rehabilitative Services ('DDARS'). In turn, DDARS is authorized to create an Adult Protective Services Unit. Ind.Code § 12–10–3–1; Ind.Code § 12–9–5–3. DDARS must contract for the adult protective services required in each county with the prosecuting attorney, with a governmental entity qualified to provide the services required, or with a combination of the two. Ind.Code § 12–10–3–7."). The services that a prosecuting attorney can perform in another county may include the investigation of matters related to the abuse, neglect, or exploitation of an endangered adult. IND.CODE § 12-10-3-7(e). Again, moreover, there is no plausible claim of conspiracy against these defendants because Key offers only "labels and conclusions" otherwise. Insofar as these activities culminated in the guardianship which was approved, that outcome is not subject to review by or challenge in this Court. Additionally, Key lacks standing to assert any claims based on Jones mistreatment or the violation of her federally secured rights. These principles are dispositive of claims against the State defendants, against Morgan County and against Monroe County. These are claims 1, 2, 4, 5, 6, 7, 10, 11, 13 and 14 in the amended complaint.

### *Claims 8 and 13*

Claims 8 and 13 are asserted against I.U. Hospital.

Claim 8 is that this defendant violated Key's due process right to assist Jones by the manner in which Jones was medicated. This claim must be dismissed because (a) Key lacks standing to assert it, and (b) any claim which might have been viable is long since barred by Indiana's statute of limitations for personal injuries.

Claim 13 is the amorphous allegation that I.U. Hospital profiled disabled persons and thereby interfered with Key rendering aid to Jones. Key, however, is only Jones' self-appointed

guardian – not a legal one -- and he does not claim to have a physician-patient with Jones. As with claim 8, therefore, Key lacks standing to assert this claim and this claim is barred by Indiana's statute of limitations for personal injuries.

### *Claims 15, 16, 17, 18, 19, 20, 21, 22, 23, 24, 25*

Claims 15, 16, 17, 18, 19, 20, 21, 22, 23, 24, 25 are asserted against some or all of the Parkview defendants, among others. Any claims and the parts of any claim which accrued before June 14, 2012, are time-barred and are dismissed.

Key's claims of fraud, in a variety of iterations, are legally insufficient because they are based on only conclusions, lacking a plausible basis in the amended complaint, and because he lacks standing to assert them as to federal agencies and there is no cognizable duty identified as to the United States and the Court of Appeals he references. Claims 15 and 24, and the ancillary conspiracy claims—claims 16, 17, 18, and 19—are dismissed. The dismissal of claim 15 is also effective as to Stephen Oliver.

Key asserts a claim of "negligent and intentional infliction of emotional distress" against some or all of the Parkview defendants and against defendant Stewart. The intentional infliction of emotional distress occurs when "one who by extreme and outrageous conduct intentionally or recklessly causes severe emotional distress to another." *Curry v. Whitaker,* 943 N.E.2d 354, 361 (Ind.Ct.App. 2011) (internal quotation omitted). A plaintiff asserting such a claim establish four elements: "that the defendant (1) engage[d] in extreme and outrageous conduct (2) which intentionally or recklessly (3) cause[d] (4) severe emotional distress to another." *Id.* Outrageous conduct must be "so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community." *Id.; see also Malone v. Woods*, 2013 WL 364569, at *4 (S.D.Ind. Jan. 30, 2013). Key's allegations rest overwhelmingly

on his opinion of the conduct he condemns. That has its own weakness in asserting a legally viable claim, but in any event the conduct he describes, when parsed from his conclusory views, does not meet the "outrageousness" requirement. This is entirely evident when it is recalled that it is Jones who has been placed in a nursing home, not Key. As to the negligent infliction of emotional distress, this tort is discussed in *Lemaster v. Spartan Tool, LLC*, No. 1:08-CV-00731-WTL-DM, 2009 WL 700240, at *6 (S.D. Ind. Mar. 16, 2009), and Key's allegations come up short because he has not alleged injury as the result of "a direct physical impact," *id.* (citing *Conder v. Wood,* 716 N.E.2d 432, 434 (Ind. 1999), and if there was a direct physical impact described in the amended complaint it was suffered by Jones, not Key. Claim 20 is dismissed.

Key alleges in claim 21 that the Parkview defendants improperly tampered with Jones' testimony in the habeas proceeding. No private cause of action exists for such conduct and if it did it would be a cause of action belonging to Jones. Recalling that Key was not permitted to proceed as Jones' next friend in the habeas action, he gains no traction from the fact that he initiated the petition and continues to seek a role in its development and resolution.

*Claim 22*

Key alleges in claim 22 that the Parkview defendants have committed the tort of invasion of privacy. In Indiana, the term "invasion of privacy" is a label used to describe "four distinct injuries: (1) intrusion upon seclusion, (2) appropriation of [name or] likeness, (3) public disclosure of private facts, and (4) false-light publicity." *Felsher v. University of Evansville,* 755 N.E.2d 589, 593 (Ind. 2001). Key has not presented a plausible claim of this nature as to *his* interests.

Key asserts that the Parkview defendants have engaged in a conspiracy to conceal fraud, abuse, and neglect. This is claim 23. Again, the conspiracy allegation is wholly conclusory and

this cause of action, if it exists and if it could be supported here based on the circumstances which have been described, belongs to Jones, not Key.

Key alleges that Judge Gray improperly appointed Stephen Oliver to represent Guardian Lumar Griggs in the habeas proceeding. This claim is specious as well as lacking a valid legal basis, but leads readily to consideration of the RICO claim.

To state a civil RICO claim, a plaintiff must allege "an injury to [his] business or property result[ed] from the underlying acts of racketeering." *Empress Casino Joliet Corp.* v. *Johnston,* 763 F.3d 723, 728–29 (7th Cir. 2014) (alterations in original) (quoting *Haroco, Inc.* v. *Am. Nat'l B & T Co. of Chi.,* 747 F.2d 384, 398 (7th Cir. 1984)). "The terms 'business or property' are, of course, words of limitation which preclude recovery for personal injuries and the pecuniary losses incurred therefrom." *Doe* v. *Roe,* 958 F.2d 763, 767 (7th Cir. 1992) (citation omitted). Key has expended time and expense in visiting and offering supportive care for Jones. He has done so as the result of their personal relationship. There is no plausible basis on which he could claim "damages" from having done so, even though he disagrees with Jones' placement and features of her medical care. Those are matters which, under the circumstances, have been placed in the hands of Jones' guardian. Any challenge to that placement belongs in the guardianship proceeding, not in a civil RICO action against Jones' guardian and caregivers. The RICO claim is legally insufficient and is dismissed. This is the end of claim 25 and also of this lawsuit.

### IV. Conclusion

Despite all the sound and fury, the amended complaint is legally insufficient. The motions challenging the sufficiency of the amended complaint are therefore **GRANTED**. These are the motions filed by the Parkview defendants [dkt. 21], the motion filed by Monroe County [dkt. 48], the motion filed by Morgan County [dkt. 50], the motion filed by defendants Judge Gray

and Lumar Griggs [dkt. 53], the motion filed by IU Health [dkt 55], the motion filed by defendant Stephen Oliver [dkt 62], and the motion filed by defendant Sophia Stewart [dkt. 77]. The foregoing rulings resolve all claims against all defendants.

Judgment consistent with this Entry shall now issue.

IT IS SO ORDERED.

Date: March 19, 2015

_Jane Magnus-Stinson_
Hon. Jane Magnus-Stinson, Judge
United States District Court
Southern District of Indiana

Distribution:

EARL R. KEY
2712 E. Empire Dr.
Altamont, IL 62411

Electronically Registered Counsel